

U.S. Department of Justice

United States Attorney
Eastern District of New York

KTF/NEM/MWG

271 Cadman Plaza East
Brooklyn, New York 11201

June 16, 2025

By ECF

The Honorable Vera M. Scanlon
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Abdelhak, et al.
              Docket No. 25-MJ-211

Dear Chief Judge Scanlon:

      The government respectfully submits this letter in response to the Court's Order directing the government to submit "a written account of the events from the time of the arrest of each of these five Defendants [in the above-referenced case] through their presentation in Court on June 14th," and to "consider and state whether these events complied with the applicable law, including the Federal Rules of Criminal Procedure." As Your Honor is aware, this is a removal case based on an indictment obtained by the United States Attorney's Office for the Northern District of New York ("USAO-NDNY"). This Office received notice of USAO-NDNY's plan to arrest these defendants only the evening before they were arrested and alerted the Court early the next morning. See ECF No. 2. As set forth in more detail below, on the morning of their arrest, a court clerk indicated that there was a noon cutoff for the defendants' arrival at the courthouse, and shortly thereafter, the courthouse was placed on lockdown for several hours due to an apparent threat. The timing of these defendants' arrests and removal proceedings both complied with applicable law and were appropriate given the cutoff and apparent safety risks and lack of ingress at the courthouse at the time of the cutoff.

      The undersigned AUSAs are supervisors in the General Crimes section of the United States Attorney's Office who supervise the duty AUSAs who were responsible for drafting the removal complaint and handling these defendants' presentments and removal proceedings. The duty AUSAs were given little notice of these arrests and handled the removal proceedings as quickly and with as much communication to the Court as possible under atypical conditions. We welcome the opportunity to meet and discuss this with Your Honor to ensure that the Court's concerns, to the extent within the control of the duty AUSAs, are addressed moving forward.

I.      Relevant Facts

According to information obtained from AUSAs in the USAO-NDNY and agents with the Drug Enforcement Administration ("DEA"), the government understands the following.

The defendants in this case were arrested in this District on the morning of June 12, 2025, pursuant to arrest warrants issued by the United States District Court for the Northern District of New York. Defendants Samer Abdelhak, Broslloyd Campbell, Christoper Christman, and Christopher Smith were arrested at approximately 6:00 a.m. at locations in Queens and Long Island, New York. Defendant Leon Chen was arrested in Queens, New York at approximately 7:30 a.m. Following the arrests, DEA agents took all defendants to a location in East Meadow, New York for processing in accordance with a predetermined arrest plan at the direction of AUSAs from the USAO-NDNY.

In East Meadow, New York, several defendants made post-arrest statements. All of those post-arrest interviews were completed within six hours of the arrests.

In the meantime, an AUSA in the USAO-NDNY notified the duty AUSA from this Office ("Duty AUSA 1") about the arrests of Abdelhak, Campbell, Christman, and Smith at approximately 6:49 a.m. The same AUSA in the USAO-NDNY informed Duty AUSA 1 about the arrest of Chen at approximately 7:56 a.m. At approximately 8:23 a.m., Duty AUSA 1 emailed court staff to alert the Court that the defendants would need to appear in this District pursuant to Federal Rule of Criminal Procedure 5(c)(2)(A). The government understands that DEA Special Agent Michelle O'Toole—a local agent assigned to assist with arraignment logistics, and who is not the case agent—had separately emailed court staff, including Pretrial Services, earlier that morning about the arrests.

At approximately 10:13 a.m., the Court's magistrate clerk ("Clerk 1") emailed Duty AUSA 1 and Special Agent O'Toole to ask if the defendants were on their way to the courthouse. Special Agent O'Toole replied to Clerk 1: "Not at this time. I'm trying my hardest. Is there a cut off to have them to pretrial/marshals?" Clerk 1 then replied: "No later than 12pm pls J Scanlon has a meeting this afternoon…" Ex. A. At approximately 10:42 a.m., Duty AUSA 1 spoke with Special Agent O'Toole, who informed Duty AUSA 1 that post-arrest interviews remained ongoing, and that the defendants were not yet on their way to the courthouse. Several minutes later, at approximately 10:46 a.m., Duty AUSA 1 called Clerk 1 and informed Clerk 1 that the defendants were not yet on their way to the courthouse. In this call, Duty AUSA 1 also asked Clerk 1 to find CJA counsel who were available either that day or the following day, as it was unclear at that point whether DEA agents would be able to bring the defendants to the courthouse by the Court's cutoff time.

Shortly thereafter, as the Court is undoubtedly aware, the courthouse was locked down after a suspicious package was found in the mailroom. The courthouse remained on lockdown for several hours, and Duty AUSA 1 (along with everyone else from the United States Attorney's Office) was notified only at 1:30 p.m.—after the noon cutoff communicated by Clerk 1—that the courthouse was being reopened only at 1:30 p.m. Even then, the government understood that an area near the U.S. Marshals Service (where new arrestees are processed) would <u>not</u> be reopening at that time.

2

During the lockdown, at approximately 12:36 p.m., another magistrate clerk ("Clerk 2") emailed Duty AUSA 1 and informed her that Your Honor was requesting Special Agent O'Toole's presence in court the following day: June 13, 2025.  See Ex. B.  The defendants were held at MDC Brooklyn overnight pending their arraignments on that date.

The next day, DEA agents transported the defendants to the courthouse for their initial appearances and arraignments.  At approximately 10:30 a.m., Special Agent O'Toole informed the duty AUSA ("Duty AUSA 2") that two of the defendants had requested medication and were being taken to a hospital.  Approximately one hour later, at 11:37 a.m., Special Agent O'Toole informed Duty AUSA 2 that the defendants were leaving the hospital.  The defendants appeared in court later that day, at approximately 3:00 p.m.

II.     Applicable Law

Pursuant to Federal Rule of Criminal Procedure 5(a)(1)(A), "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge."  Fed. R. Crim. P. 5(a)(1)(A).  There is no bright-line rule defining "unnecessary delay," but courts have routinely held that a delay between the arrest and initial appearance is "reasonable" when attributable to the needs for "processing, transit, and overnight lodging."  United States v. Ospina, No. 99-CR-73 (AGS), 2000 WL 37997, at *2 (S.D.N.Y. Jan. 18, 2000) (citing cases); see, e.g., United States v. Rubio, 709 F.2d 146, 154 (2d Cir. 1983) (holding that delay between arrest and arraignment "was not 'unnecessary' for purposes of Fed. R. Crim. P. 5(a)" where, "except for the quite reasonable periods of time actually spent in processing and in routine questioning, the hours between arrest and arraignment herein were spent mainly in lodging at the MCC while awaiting arraignment" over the weekend).

Further, the only remedy for a violation of Rule 5(a)(1)(A) is suppression of a post-arrest confession obtained during the period of "unnecessary delay."  United States v. Peeples, 962 F.3d 677, 685-86 (2d Cir. 2020).  "However, there is a safe harbor provided in 18 U.S.C. § 3501(c) that bars suppression based on an allegedly unreasonable delay if the confession was made "within six hours immediately following [the defendant's] arrest or other detention."  United States v. Gonzalez, 764 F.3d 159, 167 (2d Cir. 2014).  Thus, if the arrestee makes a confession within six hours of his arrest, then such statement cannot be suppressed on the basis of an unreasonable delay between arrest and initial appearance in court.

III.    Discussion

In this case, the delay between the defendants' arrests on June 12, 2025, and their initial appearance the next day on June 13, 2025, appears to be attributable to (1) the need to process and interview the defendants following their arrests in the hours after their arrest, (2) the Court's imposition of a 12 p.m. cutoff on June 13 because, as indicated by Clerk 1 to Special Agent O'Toole, Your Honor was unavailable later that afternoon, and (3) the unexpected lockdown of the courthouse for several hours to address a potential threat to courthouse safety.[1]  The emergency lockdown at the courthouse rendered it impossible for government agents to

---

[1]     Because the defendants' post-arrest statements were made within six hours of their respective arrests, the safe harbor of 18 U.S.C. § 3501(c) applies.

meet the 12 p.m. cutoff.  And that practical impossibility was confirmed when Clerk 2 told Duty AUSA 1 that Special Agent O'Toole should come to court the next day—thereby underscoring that the Court expected the appearances to take place the following day.  The delay between arrest and initial appearance is, therefore, reasonable under these circumstances as the government understands them to be.[2]

The General Crimes supervisors would welcome the opportunity to discuss this with Your Honor to ensure that the Court's concerns are addressed moving forward.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:          /s/        
     Kaitlin Farrell
     Nadia E. Moore
     Michael W. Gibaldi
     Assistant U.S. Attorneys
     (718) 254-6072/6362/6067

cc:  Clerk of Court (VMS) (by ECF)
     Counsel of Record (by ECF)

---

[2] Although the defendants could certainly file motions to suppress their post-arrest statements in the Northern District of New York at the appropriate time, this Court lacks any authority to consider such claims or issue any such relief.  See, e.g., United States v. Green, 499 F.2d 538, 539-41 (D.C. Cir. 1974) (holding that a district court cannot "dismiss a prosecution commenced by indictment in another district on motion of arrestees whose removal to the other district is sought pursuant to [the predecessor to Rule 5(c)(3)]," and that a contrary rule "would threaten consequences seriously adverse to the orderly administration of criminal justice"); United States v. Asencio, No. 17 MAG. 6190 (KHP), 2017 WL 4005636, at *3 .D.N.Y. Sept. 12, 2017) ("Rule 5 and the Federal Magistrate's Act are designed to prevent delay in criminal cases and get defendants quickly in front of an Article III judge for merits-related decisions."); United States v. Martinez-Leon, 565 F. Supp. 2d 1131, 1134–35 (C.D. Cal. 2008) ("All federal courts have resisted the attempts by defendants in an identity/removal hearing to challenge the manner in which evidence against them was obtained.").